IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| STELLA CROFFE, individually and as guardian of B.C., | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civil Action No. 1:25-cv-02036 (RDA-LRV) |
| CHERYL ROBERTS, in her official capacity as Director of the Virginia Department of Medical Assistance Services, | ) ) ) ) ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

This matter comes before the Court on Defendant Cheryl Roberts's Motion to Dismiss ("Motion"), Dkt. 5. This Court has dispensed with oral argument as it would not aid in the decisional process. *See* FED. R. CIV. P. 78(b); Local Civil Rule 7(J). This matter is fully briefed and ripe for disposition. Considering the Complaint (Dkt. 1), the Motion, Defendant's Memorandum in Support (Dkt. 6), Plaintiff's Memorandum in Opposition (Dkt. 11), and Defendant's Reply (Dkt. 12), this Court GRANTS Defendant's Motion for the reasons that follow.

I. BACKGROUND

A. Factual Background[1]

Plaintiff is the parent of B.C., a minor child who is a Medicaid beneficiary residing in Prince William County, Virginia, and eligible for services under the Virginia State Medicaid Plan. Dkt. 1 ¶ 5. Defendant is the Director of the Virginia Department of Medical Assistance Services

---

[1] For purposes of considering the Motion to Dismiss, the Court accepts all facts contained within the Complaint as true, as it must at the motion-to-dismiss stage. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

("DMAS"). *Id.* ¶ 6. As Director of DMAS, Defendant[2] is responsible for "administering Virginia's Medicaid program in compliance with federal law." *Id.*

B.C. has been diagnosed with Autism Spectrum Disorder and Severe Intellectual Disability. *Id.* ¶ 16. Plaintiff alleges that B.C. exhibits persistent and frequent self-injurious, aggressive, and serious behavioral problems daily. *Id.* ¶ 17. Plaintiff alleges that B.C. has caused significant injury to himself and requires various forms of protective equipment to maintain his safety and well-being. *Id.* Plaintiff alleges that she and other caregivers have suffered severe injuries due to B.C.'s conduct. *Id.* B.C. has previously run away from his caregivers into "busy roadways," further exacerbating the risk of injury to himself. *Id.* ¶ 18. Plaintiff has called "emergency services" numerous times to help handle B.C.'s "problematic behaviors." *Id.* ¶ 19.

B.C.'s physicians have declared that "specialized, intensive behavioral treatment" is necessary for treating B.C.'s condition. *Id.* ¶ 20. Plaintiff alleges that she has utilized many different "care and specialized educational placements" to curb B.C.'s behavior, "with limited to no benefit." *Id.* ¶ 22. She has sought inpatient admission for B.C., only to be told that the facilities contacted were "unable to accommodate B.C." *Id.* ¶ 21. Plaintiff alleges that B.C.'s treating providers deemed it necessary for B.C. to be taken to the Kennedy Krieger Institute ("KKI") in Baltimore, Maryland, for treatment at its inpatient Neurobehavioral Unit ("NBU"). *Id.* ¶ 25. Plaintiff alleges that KKI has had "enormous success" in treating patients that exhibit B.C.'s

---

[2] In her Motion to Dismiss, Defendant alleges that the Kennedy Krieger Institute ("KKI") negotiated with a managed care organization contracted by DMAS. Dkt. 6 at 2 n.1. Defendant further alleges that neither she nor DMAS as a whole is responsible for the actions of the managed care organization, due to DMAS' lack of involvement in both the authorization request and the refusal to pay the requested reimbursement. *Id.* However, Defendant acknowledges that Plaintiff's factual allegations must be accepted as true at this stage of the litigation. *Id.* The Court will proceed based upon Plaintiff's allegations attributing the actions discussed herein to Defendant.

symptoms, and that KKI concluded that its "multidisciplinary approach" was necessary for B.C. to make progress with his condition. *Id.* ¶¶ 26-28.

On or around April 1, 2025, KKI issued an authorization request to Defendant for funding to treat B.C. in the NBU for four months. *Id.* ¶ 29. During this period, the NBU would "assess B.C.'s behaviors, develop an effective treatment, generalize the treatment across all settings[,] and train care providers." *Id.* Plaintiff alleges that KKI will provide their services "if Defendant pays a rate sufficient to cover the majority of the treatment." *Id.* ¶ 30. Plaintiff alleges that such payment "is the standard approach for comparable placements." *Id.*

On or around April 10, 2025, an authorization was obtained, and Defendant was contacted to negotiate a Single Case Agreement. *Id.* ¶ 31. Plaintiff further alleges that Defendant never responded to the request, and that B.C.'s admission had to be cancelled. *Id.* Plaintiff alleges that Defendant asked KKI to provide the per diem rates for admission and billed charges. *Id.* ¶ 32. Plaintiff alleges that the per diem rate is $7,500 and that the requested reimbursement is 85% of billed charges. *Id.* Plaintiff alleges that Defendant offered $1,000 per diem in response. *Id.*

Communications between Defendant and KKI continued after the initial offers. *Id.* ¶ 33. Plaintiff alleges that KKI offered to accept the Maryland Medicaid contracted per diem rate of $5,487.42 to be reimbursed at 100%. *Id.* ¶ 34. Plaintiff alleges that Defendant offered to pay 60% of the Maryland Medicaid per diem. *Id.* ¶ 35. Plaintiff alleges that negotiations between Defendant and KKI stalled at this point, and that Defendant "failed and refused to establish or approve an appropriate facility-specific rate, despite repeated requests." *Id.* ¶¶ 35-36. Plaintiff alleges that Defendant's refusal to pay the requested facility rate resulted in "an effective denial of the request for treatment without providing an ability to appeal." *Id.* ¶¶ 37-38. Plaintiff further alleges that

the list of alternative providers that Defendant provided her was unhelpful, as none of the listed providers were willing and able to admit B.C. *Id.* ¶ 39.

Plaintiff asserts that B.C. had gone without necessary medical treatment for over six months prior to the filing of the Complaint. *Id.* ¶ 43. Plaintiff alleges that B.C. is entitled to such treatment under the Early and Periodic Screening, Diagnostic and Treatment provision of the Medicaid Act, 42 U.S.C. § 1396d(r)(5). *Id.* ¶ 41. Plaintiff alleges that, during this period of delay, B.C. has experienced "increased aggression, behavioral instability, and risk of harm to self and caregivers." *Id.* ¶ 44.

### B. Procedural Background

On November 14, 2025, Plaintiff filed her Complaint individually and as guardian of B.C. Dkt. 1. Plaintiff asserts four violations of the Medicaid Act, 42 U.S.C. § 1396 *et. seq.*, which she raises pursuant to 42 U.S.C. § 1983.

On December 10, 2025, Defendant filed the instant Motion. Dkts. 5, 6. On December 22, 2025, Plaintiff filed her Opposition. Dkt. 11. On December 29, 2025, Defendant filed her Reply. Dkt. 12.

## II. LEGAL STANDARD

### A. 12(b)(1) Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(1) provides for dismissal when the Court lacks jurisdiction over the subject matter of the action. A district court must dismiss an action over which it lacks subject-matter jurisdiction. FED. R. CIV. P. 12(b)(1), (h)(3). In considering a 12(b)(1) motion to dismiss, the burden is on the plaintiff to prove that subject-matter jurisdiction is proper. *See United States v. Hays*, 515 U.S. 737, 743 (1995) (citing *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936)); *see also Adams v. Bain*, 697 F.2d 1213, 1219 (4th

Cir. 1982). There are two ways in which a defendant may prevail on a 12(b)(1) motion. First, a defendant may attack the complaint on its face when the complaint "fails to allege facts upon which subject jurisdiction may be based." *Adams*, 697 F.2d at 1219. Under this approach, all facts as alleged by the plaintiff are assumed to be true. *Id.* Alternatively, a 12(b)(1) motion to dismiss may attack the existence of subject-matter jurisdiction over the case apart from the pleadings. *Williams v. United States*, 50 F.3d 299, 304 (4th Cir. 1995). In such a case, "[n]o presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of the jurisdictional claims." *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.3d 884, 891 (3d Cir. 1977). Moreover, a court may consider evidence extrinsic to the complaint to determine whether subject-matter jurisdiction exists. *Adams*, 697 F.2d at 1215 (citing *Mims v. Kemp*, 516 F.2d 21 (4th Cir. 1975).

## B. 12(b)(6) Motion to Dismiss

To survive a motion to dismiss brought under Federal Rule of Civil Procedure 12(b)(6), a complaint must set forth "a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleaded factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). When reviewing a motion brought under Rule 12(b)(6), a court "must accept as true all of the factual allegations contained in the complaint" drawing "all reasonable inferences" in the plaintiff's favor. *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted). "[T]he court 'need not accept the [plaintiff's] legal conclusions drawn from the facts,' nor need it 'accept as true unwarranted inferences, unreasonable conclusions, or arguments.'" *Wahi v. Charleson Area Med. Ctr., Inc.*, 562 F.3d 599, 616 n.26 (4th Cir. 2009) (quoting *Kloth v.*

*Microsoft Corp.*, 444 F.3d 312, 319 (4th Cir. 2006)). Additionally, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Generally, courts may not look beyond the four corners of the complaint in evaluating a Rule 12(b)(6) motion, *see Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500, 508 (4th Cir. 2015), but they "may consider documents . . . attached to the motion to dismiss, as long as they are integral to the complaint and authentic," *Sec'y of State for Def. v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007).

## III. ANALYSIS

Defendant argues that Plaintiff's Complaint fails to state a claim upon which Plaintiff could recover, because Plaintiff does not have a privately enforceable cause of action the four Medicaid provisions upon which she relies. Defendant further argues that Plaintiff has failed to identify a concrete injury that she has suffered in her individual capacity, such that she lacks standing to pursue such claims in her individual capacity. The Court will first address the matter of Plaintiff's standing before turning to Defendant's other arguments in favor of dismissal.

### A. Lack of Subject Matter Jurisdiction

As an initial matter, the Court must first address Plaintiff's standing, because that impacts this Court's subject matter jurisdiction. To show that she has Article III standing, Plaintiff must establish: (i) an injury in fact; (ii) that is fairly traceable to Defendant; and (iii) that is redressable by a favorable decision. *Lujan v. Def's. of Wildlife*, 504 U.S. 555, 560 (1992). Here, Plaintiff asserts her claims not just as guardian of B.C., but individually, and it is in that regard that the Court must assess Plaintiff's standing.

Here, Plaintiff alleges in her Complaint that B.C. has "experienced increased aggression, behavioral instability, and risk of harm to self and caregivers" in the wake of Defendant's failure

to establish a payment plan with KKI for B.C.'s treatment. Dkt. 1 ¶ 44. Plaintiff never claims to have suffered an injury to herself because of Defendant's conduct.[3] In her Opposition, Plaintiff states that she has suffered injuries of her own in the form of "emotional distress" because "her child is being denied medically necessary treatment" and because she is suffering "interference with parental decision-making." Dkt. 11 at 12. Because these injuries were not alleged in the Complaint, the Court will not consider them now. *See Holloman v. Huntington Ingalls Inc.*, 499 F. Supp. 2d 269, 273 (E.D. Va. 2020) (explaining that "a complaint may not be amended by the briefs in opposition to a motion to dismiss") (internal citations omitted). Accordingly, Plaintiff has failed to allege an injury in fact to herself. Therefore, Plaintiff's Complaint will be dismissed to the extent that Plaintiff asserts claims in her individual capacity for lack of standing.

## B. Failure to State a Claim

Section 1983 "authorizes a party who has been deprived a federal right under the color of state law to seek relief." *City of Monterey v. Del Monte Dunes*, 526 U.S. 687, 707 (1999). To state a claim under Section 1983, "a plaintiff must allege the violation of a right preserved by another federal law or by the Constitution." *Kendall v. City of Chesapeake*, 174 F.3d 437, 440 (4th Cir. 1999) (citing *Baker v. McCollan*, 443 U.S. 137, 140 (1979)). Specifically, "a plaintiff must assert the violation of a federal *right*, not merely a violation of federal *law*." *Gonzaga Univ. v. Doe*, 536 U.S. 273, 282 (2002) (quoting *Blessing v. Freestone*, 520 U.S. 329, 340 (1997)) (emphases in original).

In 2025, the Supreme Court again emphasized that "statutes create individual rights only in 'atypical case[s].'" *Medina v. Planned Parenthood S. Atl.*, 606 U.S. 357, 368 (2025) (quoting

---

[3] A Plaintiff who brings a complaint on behalf of another party must still allege an injury that "affects the plaintiff in a personal and individual way." *Spokeo Inc. v. Robins*, 578 U.S. 330, 338 (quoting *Lujan*, 504 U.S. at 560).

7

*Health and Hosp. Corp. of Marion Cty. v. Talevski*, 599 U.S. 166, 183 (2023)). The *Medina* decision also addressed whether the Medicaid Act provides a private right of action and, with respect to 42 U.S.C. § 1396a(a)(23)(A), determined that no such private right was intended to be conferred. *Id.* at 385. In *Medina*, the Supreme Court emphasized that, typically, when a state violates the conditions of the Medicaid Act, the remedy is "action by the Federal Government to terminate funds to the State." *Id.* at 366 (quoting *Gonzaga*, 536 U.S. at 273). This is because the Medicaid Act is a statute enacted pursuant to Congress's spending power. *Id.* at 367.

Accordingly, the *Medina* Court clarified that, to show that a statute confers an enforceable right and does not simply provide a benefit, a plaintiff must show that the statute meets two criteria. First, the plaintiff must show that the law "clear[ly] and unambiguous[ly] uses 'rights-creating terms.'" *Id.* at 368 (quoting *Gonzaga*, 536 U.S. at 284, 290). Second, the statute "must display 'an unmistakable focus' on individuals like the plaintiff." *Id.* at 368 (quoting *Gonzaga*, 536 U.S. at 284). This already stringent test is especially so for Spending Clause legislation like the Medicaid Act. *Id.* at 368. Indeed, the Supreme Court noted that, to date, it has "identified only three sets of spending-power statutes that confer enforceable rights under § 1983." *Id.* at 376.

The Supreme Court, in *Medina*, emphasized the rights creating language in the Federal Nursing Home Reform Act (the "FNHRA"), which it interpreted in *Talevski*. The FNHRA specifically refers to: (i) "Requirements relating to residents' rights"; (ii) "General rights"; and (iii) "Specified rights." 42 U.S.C. § 1396r; *id.* at § 1396r(c)(1)(A) ("A nursing home must protect and promote the *rights* of each resident, including the following *rights*. . . ." (emphasis added)). The Supreme Court emphasized that this is the kind of language that gives "a grantee clear and unambiguous notice that, if it accepts federal funds, it may face private suits asserting an individual right." *Medina*, 606 U.S. at 378. By contrast, the Medicaid provisions that the *Medina* Court

8

found did not confer such rights referred state Medicaid plans being required to "provide." *Id.* at 377.

Applying *Medina*, the Court will address each of the provisions of the Medicaid Act upon which Plaintiff purports to rely in turn.

### i. 42 U.S.C. § 1396a(a)(8)

Plaintiff's first claim comes under 42 U.S.C. § 1396a(a)(8), which requires states to "*provide* that all individuals wishing to make application for medical assistance under the plan shall have opportunity to do so, and that such assistance *shall* be furnished with reasonable promptness to all eligible *individuals*." 42 U.S.C. § 1396a(a)(8) (emphasis added). Applying *Medina*, this provision lacks the necessary "rights-creating language," because the words "provide" and "shall" do not create a right. Indeed, in *Medina*, the Supreme Court specifically rejected that the words "must," "provide," or "shall," even when applied to "individuals," create a private right of enforcement. *Medina*, 606 U.S. at 380 ("Neither paragraph uses clear and unambiguous rights-creating language, so neither supports a private suit under § 1983.").[4] Another district judge in this District also recently reached a similar conclusion. *See Nansemond Indian Nation v. Virginia*, 795 F. Supp. 3d 733, 770 (E.D. Va. 2025) (holding that § 1396a(a)(8) does not

---

[4] The Fourth Circuit previously held that 42 U.S.C. § 1396a(a)(8) created an enforceable right; however, it used the test set out in *Blessing*. *See Doe v. Kidd*, 501 F.3d 348, 356 (4th Cir. 2007). The Supreme Court rejected this approach, favoring the test introduced in *Gonzaga* and refined in *Medina*. *Medina*, 606 U.S. at 376 ("Some lower court judges . . . still consult *Blessing* when asking whether a spending power statute creates an enforceable individual right. They should not.") (internal citations omitted). Indeed, the Fourth Circuit's decision in *Doe* relied on the statute's use of the words "must" and "shall" in determining that Section 1396a(a)(8) creates an enforceable right, which the Supreme Court has now explicitly rejected. Accordingly, the Supreme Court's decision in *Medina*, which reversed the Fourth Circuit, also abrogates the applicability of the *Doe* case. Therefore, the Court will analyze this provision under *Medina*.

contain rights-creating language for the purposes of a § 1983 claim).[5]  Although Plaintiff focuses on the mandatory nature of the word "shall," Dkt. 11 at 9, this argument was squarely rejected by the Supreme Court in *Medina*.[6]

In short, Section 1396a(a)(8) does not contain rights-creating language that is clear and unambiguous for the purposes of § 1983 and, therefore, Plaintiff's claim under this provision will be dismissed.

### ii. 42 U.S.C. § 1396a(a)(30)(A)

Plaintiff next attempts to rely on 42 U.S.C. § 1396a(a)(30)(A), the "equal access provision," which states that a "State plan for medical assistance *must*":

> *[p]rovide* such methods and procedures relating to the utilization of, and the payment for, care and services available under the plan . . . as may be necessary to safeguard against unnecessary utilization of such care and services and to assure that payments are consistent with efficiency, economy, and quality of care and are sufficient to enlist enough providers so that care and services are available under the plan.

42 U.S.C. § 1396a(a)(30)(A) (emphasis added).  As with § 1396a(a)(8), this section lacks the necessary rights-creating language that would grant Plaintiff the opportunity to pursue a claim. Although states "must provide" the listed "procedures," the Supreme Court rejected that this creates a private right of enforcement even before *Medina. See Armstrong v. Exceptional Child*

---

[5] Plaintiff attempts to differentiate the case at hand from *Nansemond* by noting that *Nansemond* concerned plaintiffs who were providers, while Plaintiff herself is a beneficiary. Dkt. 11 at 8. Even if the Court agreed with Plaintiff, she does not overcome the statute's lack of rights-creating language.

[6] Plaintiff's argument with respect to all of the provisions at issue here focuses on the words "shall" or "shall not," but Plaintiff does not grapple with the holding of *Medina* which squarely rejected that such words create rights in individuals like her as well as the *Medina* Court's reliance on the FNHRA as an example of what is necessary to create such a private right.

*Ctr., Inc.*, 575 U.S. 320, 331 (2015) (holding that "[s]ection 30(A) lacks the sort of rights-creating language needed to imply a private right of action."). The Supreme Court's holding in *Medina* reinforces the holding in *Armstrong* since it also rejected that the argument that the words "must" and "provide" are intended to create a private enforcement right. *Medina*, 606 U.S. at 377.

Even if the provision contained rights-creating language, it does not speak to the individual rights of citizens. The provision focuses on providing "methods and procedures" that make available "care and services." 42 U.S.C. § 1396a(a)(30)(A). It does not discuss any individual or class of people with specificity. This interpretation is in line with other circuits' interpretation of the statute. *See, e.g., Westside Mothers v. Olszewski*, 454 F.3d 532, 542 (6th Cir. 2006) (holding that § 1396a(a)(30)(A) "has an aggregate focus rather than an individual focus that would evince congressional intent to confer an individually enforceable right"); *Long Term Care Pharmacy All. v. Ferguson*, 362 F.3d 50, 57 (1st Cir. 2004) (holding that the statute suggested no "'intent to confer rights on a particular class of persons'") (citation omitted); *Sanchez v. Johnson*, 416 F.3d 1051, 1059 (9th Cir. 2005) (holding that the statute speaks to the obligations of the State rather than the individual's right).

Because Section 1396a(a)(30)(A) does not have rights creating language (let alone an intent to create individual rights), Plaintiff has no private enforcement right available and her claim in this regard will be dismissed.

### iii. 42 U.S.C. § 1396a(a)(10)(B)

42 U.S.C. § 1396a(a)(10)(B), known as the comparability provision, states "*must . . . provide*":

> that the medical assistance made available to any individual described in subparagraph (A)—(i) shall not be less in amount, duration, or scope that the medical assistance made available to any other such individual, and (ii) shall not be less in amount, duration

11

or scope than the medical assistance made available to individuals not described in subparagraph (A).

42 U.S.C. § 1396a(a)(10)(B) (emphasis added). Thus, here too, *Medina*'s rejection of the words "must" or "provide" as rights-creating language, precludes Plaintiff's claim. *Medina*, 606 U.S. at 380; *see also Nansemond*, 795 F. Supp. 3d at 770 (holding that mandatory terms such as "shall" do not qualify as "clear and unambiguous rights-creating language") (quoting *Medina*, 606 U.S. at 357). The word "shall" is intended as a mandate for the state to follow and does not reflect an intention to confer a private right in persons like Plaintiff. Therefore, Plaintiff cannot state a claim in reliance on this provision.

### iv. 42 U.S.C. § 1396a(a)(43)(C)

Finally, Plaintiff relies upon 42 U.S.C. § 1396a(a)(43)(C), which states that States "*must . . . provide* for" "arranging for (directly or through referral to appropriate agencies, organizations, or individuals) corrective treatment the need for which is disclosed by such child health screening services." 42 U.S.C. § 1396a(a)(43)(C) (emphasis added). These services are known as Early and Periodic Screening, Diagnostic and Treatment services, and are supplied to eligible individuals under the age of 21. Dkt. 1 ¶¶ 14–15.

This provision, like the others Plaintiff listed in the Complaint, does not contain rights-creating language that gives a private plaintiff the right to file suit under 42 U.S.C. § 1983. As squarely addressed in *Medina*, the words "must," "provide," and "shall" alone, or in conjunction with one another, are not rights-creating language. *Medina*, 606 U.S. at 380 (holding that, even where statutes "speak in mandatory terms" using "must . . . provide" or "shall," they do not "use[] clear and unambiguous rights-creating language"). Accordingly, Plaintiff has no privately enforceable right under this provision.

\* \* \*

12

In short, under recent Supreme Court precedent (which specifically addressed the Medicaid Act), none of the four provisions of 42 U.S.C. § 1396a(a) cited by Plaintiff contain rights-creating language that focuses on an individual like B.C. Therefore, the Motion will be granted, and Plaintiff's claims will be dismissed.

## IV. CONCLUSION

Although the Court sympathizes with Plaintiff, the statutes upon which Plaintiff attempts to rely do not permit her to privately enforce her claims. Accordingly, it is hereby ORDERED that Defendant's Motion to Dismiss (Dkt. 5) is GRANTED; and it is

FURTHER ORDERED that the Complaint (Dkt. 1) is DISMISSED WITH PREJUDICE, as it appears to this Court that, given the Supreme Court's holding in *Medina*, it would be futile to permit amendment.

The Clerk of the Court is directed to forward copies of this Memorandum Opinion and Order to all counsel of record and to place this matter among the ended causes.

It is SO ORDERED.

Alexandria, Virginia
April 15, 2026

/s/

Rossie D. Alston, Jr.
United States District Judge

13